## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
TIFFANI TAYLOR,                           )
                                          )
       Plaintiff,                         )
                                          )
    v.                                   )    Civil Action No. 15-685 (RBW)
                                          )
DISTRICT OF COLUMBIA,                     )
                                          )
       Defendant.                         )
_____)

## MEMORANDUM OPINION

The plaintiff, Tiffani Taylor, brought this action against the defendant, the District of Columbia, for an award of attorney's fees and costs incurred in conjunction with the plaintiff's administrative challenge as to whether the District of Columbia Public School Systems ("DCPS") was providing her son, D.T., a free appropriate education ("FAPE") as required by the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 (2012) (the "IDEA"). See generally Complaint ("Compl."). Having prevailed on her administrative challenge, the plaintiff then filed this action seeking attorney's fees and costs totaling $102,536.60, in addition to reasonable fees and costs associated with this litigation. See Mem. Supp. of Pl.'s Mot. for Attorneys' Fees ("Pl.'s Mem.") at 12. This case was then referred to Magistrate Judge Alan Kay for a report and recommendation ("Report"), see Oct. 27, 2015 Order, ECF No. 6, which he issued on April 25, 2016, recommending that the Court grant in part and deny in part the plaintiff's request for attorney's fees. Currently pending before the Court is the Plaintiff's Objections to the Magistrate Judge's Report and Recommendation ("Pl.'s Objs."). Upon careful

consideration of the parties' submissions,[1] the Court concludes that it must overrule the plaintiff's objections and adopt Magistrate Judge Kay's Report in its entirety.

## I.      STANDARDS OF REVIEW[2]

### A.      Review of Objections to Magistrate Judge's Report and Recommendation

Federal Rule of Civil Procedure 72(b) permits district judges to refer certain motions—such as motions for attorney's fees—to a Magistrate Judge for proposed findings of fact and recommendations for the disposition of such motions. Fed. R. Civ. P. 72(b). A dissatisfied party is obligated to raise timely objections to a Magistrate Judge's Report and upon doing so, the Court reviews de novo the portions of the Magistrate Judge's Report that have been properly challenged. Id. The Court, in conducting its review, may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the [M]agistrate [J]udge with instructions." Id. Rule 72(b) provides two procedural limitations that affect a district court's review: (1) an objecting party is not permitted "to present new initiatives to the district judge," Heard v. District of Columbia, No. CIV.A.02-296, 2006 WL 2568013, at *5 (D.D.C. Sept. 5, 2006) (quoting Aikens v. Shalala, 956 F. Supp. 14, 19 (D.D.C. 1997)), as the district court may review "only those issues that the parties have raised in their objections to the Magistrate Judge's report," Aikens, 956 F. Supp. at 19; and (2) an objecting party relinquishes the opportunity to challenge the district court's adoption of any portion of the Magistrate Judge's Report that an objecting party has failed to timely file an objection. See id. at 20 n. 7 ("A

---

[1] In addition to the filings already identified, the Court considered the following submissions in reaching its decision: (1) the Defendant's Response to Plaintiff's Objections to the Magistrate Judge's Report and Recommendation ("Def.'s Objs. Resp."); (2) the Plaintiff's Reply to Defendant's Response to Plaintiff's Objections to the Magistrate Judge's Report and Recommendation ("Pl.'s Objs. Reply"); (3) the Defendant's Opposition to Plaintiff's Motion for Attorney's Fees ("Def.'s Opp'n"); and (4) the Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Attorneys' Fees ("Pl.'s Reply Br.").

[2] Because the facts are not contested by either party, the Court finds a recitation of the facts unnecessary and will proceed with the relevant standards of review and its analysis.

majority of the circuits have a longstanding rule that the failure of a party to object to either the factual or legal aspects of a Magistrate Judge's recommendations waives the opportunity to challenge the district court's adoption of those recommendations."); see also Thomas v. Arn, 474 U.S. 140, 150-51 (1985) ("It does not appear that Congress intended to require the district court review of a magistrate's factual or legal conclusions under a de novo or any other standard, when neither party objects to those findings.").

**B.    Attorney's Fees in IDEA Litigation**

Pursuant to the IDEA, a district court may award a prevailing party in an IDEA administrative proceeding "reasonable attorney's fees." § 1415(i)(3)(B)(i).  In awarding reimbursement of fees, the district court must first decide whether the party seeking the fees is a prevailing party and then determine whether the requested attorney's fees are reasonable. Jay v. District of Columbia, 75 F. Supp. 3d 214, 218 (D.D.C. 2014) (Walton, J.) (citing Jackson v. District of Columbia, 696 F. Supp. 2d 97, 101 (D.D.C. 2010)).

## II.    DISCUSSION

Neither party has objected to three portions of the fee award recommended in Magistrate Judge Kay's Report:  (1) reimbursement of the plaintiff's attorney's travel time at hourly rates equivalent to 50% of the determined reasonable hourly attorney fee rate; (2) the exclusion of 0.2 hours of the total number of hours billed by plaintiff's counsel; and (3) reimbursement of the plaintiff's attorney's costs totaling $186.60.  See Pl.'s Objs.; see also Def.'s Objs. Resp. The Court therefore accepts the unchallenged recommendations proposed by Magistrate Judge Kay as reasonable and adequately substantiated.  Accordingly, the Court adopts the Report's findings as to those aspects of its attorney's fee award. See Report at 22-23.

The plaintiff, however, objects to four of Magistrate Judge Kay's findings:   (1) the reduction of the plaintiff's attorney's fees request by 10% based upon the acquisition of only partial relief; (2) the reduction of the plaintiff's attorney's fees rate to 75% of the United States Attorney's Office ("USAO") <u>Laffey</u> attorney fees rates; (3) the reduction of the plaintiff's attorney's fees rate for performing administrative tasks to 75% of the USAO <u>Laffey</u> rates for paralegals; and (4) the reduction of attorney's fees request for the purpose of preserving public funds.  <u>See</u> Pl.'s Objs. at 2, 4, 8-9.  In response, the defendant requests that the Court deny each of the plaintiff's objections and adopt Magistrate Judge Kay's Report in its entirety.  <u>See</u> Def.'s Objs. Resp. at 7.  The Court will address each of the plaintiff's objections in turn.

## A.    The Plaintiff's Prevailing Party Status

### 1.    The Plaintiff's Degree of Success Warrants A Reduction in Fees

Although the plaintiff "prevailed on the most significant aspects of her [IDEA] claims," Magistrate Judge Kay determined that she was only a partially prevailing party because "she failed to obtain 'wrap around' services," and therefore, he recommended an overall reduction in the amount of 10% of the fee request because the plaintiff's "relief was limited in comparison to the proceeding as a whole."  Report at 11 (citing cases).  In objecting to the recommended 10% reduction, the plaintiff asserts that her attorney should be awarded full compensation for his services because her son "received full time placement at a non-public school," which "is an excellent result."  Pl.'s Objs. at 2-3 (citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, [her] attorney should recover a fully compensatory fee.").

"[I]t is the degree of the plaintiff's success that is the critical factor to the determination of the size of a reasonable fee."  <u>Platt v. District of Columbia</u>, ___ F. Supp. 3d ___, ___, 2016

WL 912171, at *8 (D.D.C. Mar. 7, 2016) (quoting A.S. v. District of Columbia, 842 F. Supp. 2d 40, 47 (D.D.C. 2012)). However, "'a finding that the plaintiff obtained significant relief' does not end the analysis." Id. (citing Hensley, 461 U.S. at 439–40). "The ultimate question to be decided by the Court is what is 'reasonable in light of [the plaintiff's] level of success.'" Id. (citing Hensley, 461 U.S. at 440). "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Id. (quoting Hensley, 461 U.S. at 440).

Here, the plaintiff's level of success at the administrative level warrants a reduction in the overall fees the plaintiff's counsel is entitled to recover. There is no dispute that the plaintiff is a fully prevailing party in Administrative Complaint Case #2014-0233 ("Case 233"). See Report at 9 (citation omitted). On the other hand, there is also no dispute that the plaintiff only partially prevailed in Administrative Complaint Case #2014-0192 ("Case 192"), in which she succeeded on only two of the four claims presented. Id. More importantly, the plaintiff did not receive the full relief she sought. Id. at 10–11. Although the plaintiff failed "to propose appropriate compensatory services" and did not "specify what remedy would effectively rectify the harm," see Pl.'s Mot., Exhibit ("Ex.") 4 (Hearing Officer Determination, Case 192) ("Case 192 Determination") at 14, the administrative hearing officer "conclude[d] that to award the student no compensation for the missed services would be inequitable," id., and thus, he awarded the plaintiff's son "nominal services as compensation," full-time placement in a private school, "[thirty] hours of independent tutoring, and [fifteen] hours of independent counseling or mentoring." Id. But, he did not award the plaintiff's son two forms of relief sought: wrap around services and other services in the form of therapeutic transport, outside counseling, and therapeutic recreation. See id. at 15 ("All other requested relief is denied."). While the

plaintiff's unsuccessful claims were procedural in nature and the relief the plaintiff received was substantial, "[t]he result is what matters," Hensley, 461 U.S. at 435, and awarding a full fee award to the plaintiff's counsel where the plaintiff "has achieved only partial or limited success," id. at 436, would be excessive. Therefore, because the plaintiff did not prevail on two of the four claims in Case 192 and she did not obtain the full relief sought, the Court, in its discretion, finds that full compensation for all of the work performed by the plaintiff's counsel would be disproportionate to the degree of success achieved. See Hensley, 461 U.S. at 440; see also Platt, __ F. Supp. 3d at __, 2016 WL 912171, at *9 (noting that because the plaintiff was unsuccessful in obtaining certain relief sought, full compensation would be unreasonable); Brown v. District of Columbia, 80 F. Supp. 3d 90, 99 (D.D.C. 2015) ("[I]t is undisputed that [the] [p]laintiff received less than all of the relief he sought at the administrative level, so a reduction in fees is justified.").

### 2.  Determining What is a Reasonable Reduction

The plaintiff next asserts that "any reduction to account for the failure to obtain wrap around services should be based on the number of hours actually spent attempting to obtain those services," and if the Court, in its discretion, decides to reduce her attorney's fees, a reduction of "4.2 hours rather than 10% of the bill, is a reasonable reduction to account for partial success." Pl.'s Objs. at 3-4. The defendant argues in response that the specific hours for work related to wrap around services are not readily identifiable because the entries in the plaintiff's attorney's invoice, examples which are cited by the defendant, see Def.'s Objs. Resp. at 2, "appear to concern the entirety of [the p]laintiffs' administrative complaint," and cannot be separated from the entries that concern only wrap around services, Def.'s Objs. Resp. at 2. The plaintiff replies that the billing statement is sufficiently detailed, as noted by Magistrate Judge Kay, and that the

defendant presented no evidence that the billing entries it identified are in fact related to the effort to acquire wrap around services. Pl.'s Objs. Reply at 1-3.

If "a prevailing party has achieved only partial success, this Court has discretion to exercise its equitable judgment to 'identify specific hours that should be eliminated, or . . . simply reduce the award to account for the limited success.'" Briggs v. District of Columbia, 102 F. Supp. 3d 164, 171 (D.D.C. 2015) (citing Hensley, 461 U.S. at 436–37). When determining which method should be used to reduce the attorney's fee, "the court must analyze the relationships amongst the successful and unsuccessful claims." McAllister v. District of Columbia, 21 F. Supp. 3d 94, 102 (D.D.C. 2014) (citing Hensley, 461 U.S. at 434-35), on reconsideration in part, 53 F. Supp. 3d 55 (D.D.C. 2014), aff'd, 794 F.3d 15 (D.C. Cir. 2015). If the claims are interrelated such that they "'involve a common core of facts,' or are based on 'related legal theories,' '[m]uch of counsel's time will likely be devoted to the litigation as a whole, making it difficult to divide the hours on a claim-by-claim basis.'" Id. (quoting Hensley, 461 U.S. at 435). And under such circumstances, courts should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours that counsel reasonably expended on the litigation." Id. (quoting Hensley, 461 U.S. at 435).

Here, the Court finds that the plaintiff's successful and unsuccessful claims are interrelated and cannot be separated easily for the Court to appropriately identify specific hours to eliminate. In Case 192, the plaintiff succeeded in proving that DCPS denied the plaintiff's son a FAPE by failing to provide (1) an appropriate individualized education program, and (2) an appropriate placement and location of services. On the other hand, the plaintiff was unsuccessful in demonstrating that DCPS failed to provide (1) timely and accurate evaluations of her son's suspected disabilities, and (2) her son's educational records, including incident reports. Report at

9.  Nonetheless, each claim shares a common core of facts that contributed to the plaintiff's chief argument that DCPS denied her son a FAPE.  In fact, the Hearing Officer who adjudicated the underlying claims noted that the plaintiff used her son's educational records and records relating to her son's then current individualized education program, which formed the basis of the plaintiff's unsuccessful claims, to support her successful claims and primary argument.  See Pl.'s Mot., Ex. 4 (Case 192 Determination) at 11, 13.  Furthermore, even though the plaintiff's attorney's invoice contains certain entries relating to the pursuit of wrap around services, other entries may also be related to this pursuit, which are not easily identifiable.  See Pl.'s Objs. at 4 (suggesting the reduction of one hour of hearing time for Case 192 as a sufficient estimate of the time dedicated to the presentation of evidence related to wrap around services because "[t]he only means of determining the exact time dedicated to wrap around services at the hearing would be a careful review of the hearing transcript [and t]hat review would be unnecessarily time consuming for the undersigned, for the District, and for the Court"); see also Def.'s Objs. Response at 2 (citing examples of the plaintiff's attorney's invoice entries that concern work performed for the plaintiff's Case 192).  Therefore, the Court is not persuaded that the plaintiff's suggested approach for reducing the attorney's fees by the number of hours expended attempting to obtain the wrap around services is appropriate.

Accordingly, the Court, in its discretion, will adopt Magistrate Judge Kay's recommendation to reduce the overall attorney's fee award by 10%, as a reasonable reduction given the plaintiff's limited success.  See Platt, __ F. Supp. 3d at __, 2016 WL 912171, at *8–9 (holding that 15% reduction was reasonable because the plaintiff did not prevail on five out of the eight issues and failed to receive some relief sought, such as placement at a certain school and wrap around services); see also Brown, 80 F. Supp. 3d at 101 ("Given that [the] [p]laintiff

prevailed on the most important aspects of his claims and the <u>de minimis</u> nature of his procedural

loss, the Court will exercise its broad discretion to reduce the total fees award for [the attorney]

and her paralegal by 10% for partial success, even though [the p]laintiff technically lost on two

of four claims at the hearing.").

## B.    Determining the Reasonable Attorney's Fees to be Awarded

The IDEA's fee-shifting provision expressly empowers district courts to exercise

discretion in determining what amounts to an award as reasonable attorney's fees to a "prevailing

party who is the parent of a child with a disability." § 1415(i)(3)(B)(i)(I). The fee applicant,

however, must demonstrate entitlement to a fee award. <u>See</u> <u>Covington v. District of Columbia</u>,

57 F.3d 1101, 1107 (D.C. Cir. 1995) (citing <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n. 11 (1984))

("[C]ourts properly have required prevailing attorneys to justify the reasonableness of the

requested rate or rates."); <u>see also</u> <u>Hensley</u>, 461 U.S. at 437 ("[T]he fee applicant bears the

burden of establishing entitlement to an award and document the appropriate hours expended and

hourly rates.").

In this District, an appropriate fee award turns on a three-part test. <u>See</u> <u>Hammond v.</u>

<u>District of Columbia</u>, ___ F. Supp. 3d ___, ___, 2016 WL 1704116, at *5 (D.D.C. Apr. 28, 2016)

(Walton, J.) (citing <u>Eley v. District of Columbia</u>, 793 F.3d 97, 99 (D.C. Cir. 2015)). "First, the

court must determine the number of hours reasonably expended in litigation." <u>Id.</u> (quoting <u>Eley</u>,

793 F.3d at 100). "Second, it must set the reasonable hourly rate." <u>Id.</u> "Finally, it must

determine whether use of a multiplier is warranted." <u>Id.</u> However, because the parties do not

object to Magistrate Judge Kay's recommendation regarding the number of hours reasonably

expended by the plaintiff's attorney,[3] <u>see generally</u> Pl.'s Objs., and the IDEA prohibits

---

[3] As the Court previously noted, Magistrate Judge Kay recommended that only 0.2 hours of the total hours billed by plaintiff's counsel should be excluded for lack of specificity. Report at 21-22.

application of any "bonus or multiplier," § 1415(i)(3)(C), the Court must address only the plaintiff's objections concerning the reasonable hourly rate recommended for (1) the legal services provided by the plaintiff's attorney and (2) the clerical/administrative tasks performed by the attorney.

### 1. The Reasonable Hourly Rate for the Attorney's Fees

To establish that a requested hourly rate is reasonable, a plaintiff must present evidence concerning: (1) the attorney's billing practices; (2) the attorney's skill, experience, and reputation; and (3) the prevailing market rates in the relevant community. See Garvin v. District of Columbia, 851 F. Supp. 2d 101, 105 (D.D.C. 2012) (Walton, J.) (citing Jackson, 696 F. Supp. 2d at 101). Plaintiffs seeking to recover attorney's fees at the full USAO Laffey rate, must show either that the "IDEA proceedings qualify as 'complex federal litigation,' to which Laffey rates presumptively apply," or in the alternative, that the "rates customarily charged by IDEA practitioners in the District are comparable to those provided under the USAO Laffey Matrix." Flood v. District of Columbia, __ F. Supp. 3d __, 2016 WL 1180159, at *9 (D.D.C. 2016) (Howell, Chief J.).

Magistrate Judge Kay concluded that 75% of the USAO Laffey rate was reasonable compensation for the legal services provided by the plaintiff's attorney because "the [p]laintiff has not argued that this case was particularly complex," and that there was "no reason to depart from the majority of recent IDEA cases in this Court that have found 75% of the USAO Laffey Matrix to be a reasonable hourly rate." Report at 19–20. The plaintiff objects to the recommendation and seeks the full USAO Laffey rate because "the requested rates are reasonable and in line with the prevailing rates in the community" and that "an individual case's complexity is irrelevant to the determination of a reasonable rate." Pl.'s Objs. at 5, 7 (citation

omitted).  The defendant argues in response that the Court should deny the plaintiff's objection and adopt Magistrate Judge Kay's recommendation based on his thorough consideration of the plaintiff's evidence.  See Def.'s Objs. Resp. at 3-5.  The Court agrees with the defendant and, therefore, rejects the plaintiff's objection and adopts Magistrate Judge Kay's recommendation to reduce the plaintiff's attorney's fees rate to 75% of the USAO Laffey rate.

### a.  Prevailing Market Rate for IDEA Litigation

Ascertaining the prevailing market rate is "inherently difficult."  Eley, 793 F.3d at 100 (quoting Blum, 465 U.S. at 895 n.11).  Nonetheless, the court must determine "the prevailing hourly rate in each particular case with a fair degree of accuracy."  Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1325 (D.C. Cir. 1982).  Therefore, the plaintiff must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Eley, 793 F.3d at 100 (emphasis added) (quoting Blum, 465 U.S. at 895 n.11); see also Nat'l Ass'n of Concerned Veterans, 675 F.2d at 1325 ("An applicant is required to provide specific evidence of the prevailing community rate for the type of work for which he seeks an award." (emphasis added)).

A fee applicant may provide as evidence attorneys' fee matrices, which serve as "'a useful starting point' in calculating the prevailing market rate."  Eley, 793 F.3d at 100 (citing Covington v. District of Columbia, 57 F.3d 1101, 1109 (D.C. Cir. 1995)).  In the District of Columbia, "[t]he most commonly used fee matrix is the Laffey Matrix," id. at 101, which currently has two "[c]ompeting updated Laffey Matrices," which both use "'[t]he hourly rates approved in Laffey . . . for work done principally in 1981–82'as [their] baseline[s]," id. (alterations in original) (citation omitted).  The USAO Laffey Matrix modifies primarily the

baseline rates "to account for inflation by using the Consumer Price Index for All Urban Consumers (CPI–U) of the United States Bureau of Labor Statistics." Id. (citation omitted). Whereas, the LSI Laffey Matrix adjusts for the increases in costs for legal services only. Id. at 101–02. Because fee matrices are generally considered "somewhat crude," Covington, 57 F.3d at 1109 ("[T]he Laffey matrix, for example, lumps attorneys with four to seven years of experience in the same category; attorneys with eleven to nineteen [years] also share the same hourly rate."), a fee applicant may supplement the proffered fee matrix with additional evidence, including "surveys to update the matrix; affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases," id.

The plaintiff asserts that her "requested rates are reasonable and in line with the prevailing rates in the community" and as support for her position provides evidence consisting of declarations from several IDEA practitioners, recent fees awarded by courts in this Circuit, a Statement of Interest of the United States, and a Market Survey. Pl.'s Objs. at 7. The Court addresses each of the plaintiff's sources of support for her position in turn.

### i. Declarations and Verified Statements

As noted above, an IDEA plaintiff may offer evidence through "affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases," Eley, 793 F.3d at 101 (emphasis added) (quoting Covington, 57 F.3d at 1109), to support her request for payment of the hourly rate billed by her attorney. The plaintiff has submitted a total of ten declarations from practitioners, which describe the practitioners' experiences, skills, billing rates, and the difficulty IDEA cases have presented in matters they

have litigated.  In analyzing these submissions, the Court finds that they "are not sufficient evidence to justify [the plaintiff's] contention that [the full USAO] <u>Laffey</u> Matrix rates are comparable to [the] rates prevailing in the community for similar services in IDEA litigation." <u>Wilhite v. District of Columbia</u>, __ F. Supp. 3d __, __, 2016 WL 4007073, at *6 (D.D.C. July 25, 2016) (Contreras, J).

The primary basis for the Court's conclusion is that the majority of the practitioners failed to demonstrate that the full USAO <u>Laffey</u> Matrix rates are "the prevailing community rate[s] for IDEA litigation, because they lack any recitation of the 'precise fees' that they have [actually] 'received.'"  <u>Id.</u> (citing <u>Eley</u>, 793 F.3d at 101) (citations omitted).  For example, of the ten submissions, two practitioners represent merely that they charge LSI <u>Laffey</u> rates, see Pl.'s Mot., Exhibit ("Ex.") 12 (Verified Statement of Douglas Tyrka) ¶ 4; Pl.'s Mot., Ex. 13 (Verified Statement of Nicholas Ostrem) ¶ 4; two practitioners charge USAO <u>Laffey</u> Matrix rates, see Pl.'s Mot., Ex. 9 (Declaration of Carolyn Houck, Esq.) ¶ 4; Pl.'s Mot., Ex. 10 (Declaration of Elizabeth T. Jester, Esq.) ¶ 12; one practitioner merely represents that she charges a rate below the applicable USAO <u>Laffey</u> Matrix rate, see Pl.'s Mot., Ex. 15 (Verified Statement of Diana M. Savit) ¶ 11; two practitioners merely provide the rates they generally seek from the opposing school district, see Pl.'s Mot., Ex. 8 (Declaration of Pierre Bergeron) ¶ 13 ("I seek rates congruent with the rates prevailing in the community based on the USAO <u>Laffey</u> Matrix); Pl.'s Mot., Ex. 14 (Verified Statement of Domiento C.R. Hill) ¶ 14 ("I have restricted myself to requesting fees calculated with the hourly rate approved by DCPS, the 75% USAO [<u>Laffey</u> Matrix] rate."); and one practitioner does not provide any specific rates charged, requested, or received, see Pl.'s Mot., Ex. 17 (Verified Statement of Maria G. Mendoza).  Only two of the practitioners provide affidavits that indicate the precise fees they have actually received.  <u>See</u>

Pl.'s Mot., Ex. 11 (Declaration of Emily B. Read, Esq.) ("Read's Decl.") ¶ 6; Pl.'s Mot., Ex. 16 (Verified Statement of Alana Hecht) ("Hecht's V.S.") ¶ 16. Thus, because the majority of the submissions "focus on the fees they charged . . . [and] do not help the Court determine whether the <u>Laffey</u> Matrix rates that [the plaintiff] requests 'are in line with those prevailing in the community,'" <u>Wilhite</u>, __ F. Supp. 3d at __, 2016 WL 4007073, at *4 (citing <u>Eley</u>, 793 F.3d at 101) (citations omitted), the Court focuses on the two submissions from practitioners that "describe [the] rates that the attorneys <u>received</u> for their IDEA work," <u>id.</u>

First, in her affidavit, Emily Read notes that "the Court in <u>Blackman</u> awarded [her] the full <u>Laffey</u> rate" for the vast majority of the work she performed in that case. Pl.'s Mot., Ex. 11 (Read Decl.) ¶ 6. However, Ms. Read's reliance on <u>Blackman v. District of Columbia</u>, 56 F. Supp. 3d 19 (D.D.C. 2014), to describe the prevailing community rate for IDEA litigation is misplaced because that case did not involve "[the] rates 'prevailing in the community for <u>similar services</u>.'" <u>Wilhite</u>, __ F. Supp. 3d at __, 2016 WL 4007073, at *4 (citing <u>Eley</u>, 793 F.3d at 101). The court in <u>Blackman</u> concluded that the plaintiff was part of a class action lawsuit that involved litigation at both the administrative agency level and the federal district court level, <u>see</u> <u>Blackman</u>, 56 F. Supp. 3d at 22-23, and presented issues that "were complex and time-consuming and [had] broad implications for all charter schools in the District of Columbia," <u>id.</u>, at 28-29 ("[T]his Court forced plaintiff's counsel to research many novel questions of law under tight time constraints."). Thus, <u>Blackman</u> was not a routine IDEA matter, <u>see</u> <u>Platt</u>, __ F. Supp. 3d at __, 2016 WL 912171, at *10 (D.D.C. Mar. 7, 2016), and therefore, the Court is not persuaded that Ms. Read's submission shows that full USAO <u>Laffey</u> Matrix rates are the prevailing rates in the community for the IDEA litigation in the case at hand, which occurred

14

entirely at the administrative agency level.[4]

Second, Alana Hecht states in her submission that she has "litigated more than 150 IDEA cases since 2010" and that she is "typically awarded at least $270.00 per hour for [her] IDEA work." Pl.'s Mot., Ex. 16 (Hecht V.S.) ¶¶ 6, 16. However, as Magistrate Judge Kay noted, Ms. Hecht had five years of experience when she made her submission, which would warrant a $325 hourly rate under the USAO Laffey Matrix, not $270.00 per hour. Therefore, Ms. Hecht's submission actually shows that the prevailing community rate for IDEA litigation is below the full USAO Laffey rate, and accordingly, does not support the plaintiff's requested hourly rate.

In sum, the plaintiff's declarations and verified statements do not establish the full USAO Laffey rate as the reasonable hourly rate prevailing in the community for similar IDEA litigation. See Platt, __ F. Supp. 3d at __, 2016 WL 912171, at *10 (concluding that the two declarations submitted demonstrate that the reasonable rate for IDEA litigation is well below the Laffey rate); see also Wilhite, __ F. Supp. 3d at __, 2016 WL 4007073, at *4.[5] Thus, the plaintiff's submissions fail to show that the prevailing rate for IDEA litigation occurring solely at the administrative agency level is payable at the rate requested by the plaintiff.

## ii. Cases

To support her fee request, the plaintiff has also proffered "evidence of recent fees awarded by the courts . . . to attorneys with comparable qualifications handling similar cases." Eley, 793 F. 3d at 101 (quoting Covington, 57 F.3d at 1109). On this score, the plaintiff cites

---

[4] For purposes of assessing the complexity of the underlying litigation, courts have distinguished litigation completely occurring at the agency level as compared to litigation taking place at the district court level to determine whether a prevailing party's requested hourly rate is reasonable. An award consisting of the full USAO Laffey rate is typically warranted when the underlying litigation occurred at both levels and was sufficiently complex. See Blackman, 56 F. Supp. 3d at 25-26 (comparing cases where 75% of the USAO Laffey rate was warranted for routine IDEA matters to those cases that were complex and warranted compensation at the full USAO Laffey rate).

[5] The plaintiff in Platt relied on the same submissions from Ms. Jester and Ms. Read as the plaintiff has in this case, and the plaintiff in Wilhite also relied on all of the same submissions.

A.B. v. District of Columbia, 19 F. Supp. 3d 201 (D.D.C. 2014); Blackman, 677 F. Supp. 2d

169; D.L. v. District of Columbia, 256 F.R.D. 239 (D.D.C. 2009); Merrick v. District of

Columbia, 134 F. Supp. 3d 328 (D.D.C. 2015); and Flood v. District of Columbia, __ F. Supp.

3d ___, 2016 WL 1180159 (D.D.C. Mar. 25, 2016), see Pl.'s Mot. at 5-6; see also Pl.'s Objs. at

4, as support for the attorney's fees requested in this case.

      The plaintiff primarily relies on the fee award in D.L. v. District of Columbia as support

for her request for a reasonable hourly rate at the full USAO Laffey Matrix rate. In D.L., the

plaintiff argued that the LSI Laffey Matrix rates were the appropriate, reasonable hourly rates for

his counsel's representation. 256 F.R.D. at 242. But, the court declined to deviate from the

"standard (USAO) Laffey matrix rates . . . [because] the work to be compensated in th[at IDEA]

case was not particularly complex." Id. at 243 ("Counsel's tasks included drafting discovery

motions to compel, negotiating with the District in a discovery dispute, and drafting a fee

petition. Although the attorneys for plaintiffs have deftly performed their tasks, a discovery

dispute is not the type of complex work that gives rise to use of the enhanced Laffey matrix.").

Although the court authorized a fee award at the full USAO Laffey rates, the court was not

presented with the question of whether a reduction of the USAO Laffey rate was reasonable;

rather, it focused on determining which Laffey matrix was appropriate. Furthermore, the court

applied several reductions to the plaintiffs' request for fees and expenses. Id. at 246 (reducing

the plaintiff's fee request (1) to preclude recovery from some of the work performed for the

plaintiffs, (2) to reflect the plaintiff's limited status as a prevailing party, and (3) to take into

account the attorneys' "vague time descriptions"). Consequently, this case provides little support

for the plaintiff's claim that an award of the full USAO Laffey rates is reasonable.

      Additionally, as noted above, see supra Part II.B.1.a.i. (discussing Ms. Read's

declaration), the plaintiff cites two cases, including <u>Blackman</u>, which do not show that full USAO <u>Laffey</u> rates are the rates "prevailing in the community for <u>similar services</u>." <u>Wilhite</u>, __, F. Supp. 3d at __, 2016 WL 40007073, at *5 (citing <u>Eley</u>, 793 F.3d at 104). In <u>A.B.</u>, the court found that a departure from the full USAO <u>Laffey</u> rate was unwarranted because the "case involved over two years of complex litigation, both at the administrative and the federal level." 19 F. Supp. 3d at 212 ("Plaintiff's complaint raised appeals regarding not one, but two [Hearing Officer Determination]s that claimed violation of four federal statutes, involved full briefing of cross-motions for summary judgment, and resulted in an oral argument in front of this Court as well as a remand to the [Hearing Officer Determination] for further determination of A.B.'s rights."). Because <u>A.B.</u> and <u>Blackman</u> both involved complex litigation and not <u>similar services</u> to those provided in this case, the Court is not persuaded that the fees awarded in those cases warrant an award at the full USAO <u>Laffey</u> Matrix rates here.

Furthermore, the plaintiff asserts that another member of "this Court recently awarded [her] counsel, Pierre Bergeron, rates aligned with the USAO <u>Laffey</u> Matrix in <u>Merrick v. District of Columbia</u>." Pl.'s Mot. at 6. Based upon the affidavits submitted by the plaintiff in <u>Merrick</u>, the court awarded the plaintiff the full USAO <u>Laffey</u> Matrix because the proffered affidavits constituted evidence of the prevailing rates in the community.[6] 134 F. Supp. 3d at 340. But, as another member of this Court recently noted, the <u>Merrick</u> court's

> reliance on those declarations was, however, misplaced: contrary to the D.C. Circuit's directive in <u>Eley</u>, the <u>Merrick</u> affidavits were not evidence of 'the precise fees that attorneys with similar qualifications [had] <u>received</u> from fee-paying clients in comparable cases.' <u>Eley</u>, 793 F.3d at 101 (emphasis added) (quoting <u>Covington</u>, 57 F.3d at 1109); cf. <u>Merrick</u>, 134 F. Supp. 3d at 340 (noting that, in the affidavits that practitioners submitted in support of the <u>Merrick</u> plaintiff's fee petition, the practitioners documented rates that they charged or rates that had at some point 'been found to be reasonable') (declining to address whether the practitioners actually received the rates they charged).

---

[6] The plaintiff in this case submitted the same affidavits as the plaintiff in <u>Merrick</u>.

Wilhite, __ F. Supp. 3d at __, 2016 WL 4007073, at *6.

Finally, the plaintiff cites Flood v. District of Columbia, asserting that "[b]ased on less evidence of the market rate than what was presented to this Court and the Magistrate Judge," Pl.'s Objs. at 4, the district court in Flood, in awarding full USAO Laffey rates, concluded that the "evidence persuasively demonstrate[d] both that IDEA practitioners in the District of Columbia routinely seek reimbursement at full USAO Laffey rates and that a majority of Judges on this Court have found such rates reasonable for at least some IDEA cases." Id. (quoting Flood, __ F. Supp. 3d at __, 2016 WL 1180159, at *14). However, this Court does not find the analysis in Flood convincing. Similar to Merrick, the district court in Flood relied on the plaintiff's submission of six affidavits, all which only provided evidence of what the practitioners routinely seek for reimbursement and not the precise fees they received. See Flood, __ F. Supp. 3d at __, 2016 WL 1180159, at *11 (noting that the declarations "leave some uncertainty as to which IDEA practitioners in this jurisdiction regularly collect fees comparable to those supplied by the USAO Laffey Matrix. Most notably, while each of the declarants avers that he or she charges, or has charged, paying clients at Laffey rates, the declarants each fail to specify what proportion of their clients actually pay these rates."). And the Flood court observed that its "review of recent IDEA fee awards indicates fairly broad support among Judges on this Court for reimbursement at or above full USAO Laffey rates, at least for 'complex' IDEA administrative proceedings . . . ." Id. __ F. Supp. 3d at __, 2016 WL 1180159, at *13. Thus, because the plaintiff in Flood did not provide affidavits, or other such submissions, describing the precise fees practitioners with similar qualifications actually received for similar services or alleged that the underlying IDEA litigation there was as complex as similar IDEA cases receiving full USAO Laffey rates as directed under Eley, see Eley, 793 F.3d at 101 (reversing the

district court's fee award because the plaintiff did not satisfy her burden of showing that the requested rate was in line with those prevailing in the District for similar services due to her failure to "provide[] both 'affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases;' and 'evidence of recent fees awarded by courts or through settlement to attorneys with comparable qualifications handling similar cases"), the court improperly concluded that a full USAO <u>Laffey</u> rate was reasonable.

Accordingly, the Court does not find the cases relied upon by the plaintiff where fee awards were recently granted by courts in this Circuit show that the full USAO <u>Laffey</u> rate is the prevailing rate for legal services provided in IDEA cases like this case.

### iii.   Other Evidence

The plaintiff also includes as evidence supporting her fee petition a Statement of Interest of the United States ("Statement of Interest"). Pl.'s Reply Br., Ex. 1. This same Statement of Interest, which was "filed in <u>Eley v. District of Columbia</u>, Civil Action No. 11-0309 (BAH) (D.D.C.), mainly "focuses on distinguishing between USAO <u>Laffey</u> Matrix rates and LSI <u>Laffey</u> Matrix rates[,]" not on determining the applicable prevailing rate. Report at 19. And, in any event, attached to the Statement of Interest was a market survey, <u>see</u> Pl.'s Reply Br., Ex. 2 (Declaration of Dr. Laura A. Malowane), which indicated that the prevailing market rate was below the USAO <u>Laffey</u> rate. <u>Id.</u> ¶ 63 (concluding that "the prevailing hourly rate . . . is between $390 and $512[, which] . . . is slightly lower than the $520 rate indicated by the USAO <u>Laffey</u> Matrix."). Thus, the Court does not find the Statement of Interest persuasive in showing that the plaintiff has met her burden of providing sufficient evidence that the prevailing market rate for

IDEA proceedings warrants an award of the full USAO <u>Laffey</u> rate in this case.[7]

### b. Complexity of the Underlying Litigation

The plaintiff next asserts that "an individual case's complexity is irrelevant to the determination of a reasonable rate . . . ," but that "if the Court does use a complexity analysis, as it recently utilized in <u>Hammond</u>, [the plaintiff's] substantial victory for her child with disabilities does not warrant a reduction in fees." Pl.'s Objs. at 5-6 (citing <u>Flood</u>, __ F. Supp. 3d at __, 2016 WL 1180159, at *7). The defendant responds that the plaintiff "failed to make this argument in [her] fee petition . . . and should be precluded from making this argument in the first instance before this Court." Def.'s Objs. Resp. at 5 ("[The p]laintiff [is] asking the Court to reject [Magistrate] Judge Kay's recommendation based upon an argument that was not included in [her] fee petition, and which [Magistrate] Judge Kay did not have an opportunity to consider prior to issuing his [Report]."). The plaintiff counters that her use of <u>Hammond</u> "is not new evidence or law, it is merely applying the facts of this case to the facts of an analogous case for the Court's convenience." Pl.'s Objs. Reply at 5. The Court, however, agrees with the defendant, and because the plaintiff failed to argue her complexity position before Magistrate Judge Kay, the Court will not consider the plaintiff's attempt to present a new theory for the Court to tackle at this late juncture.

Rule 72(b) of the Federal Rules of Civil Procedure "does not permit a litigant to present new initiatives to the district judge." <u>Aikens</u>, 956 F. Supp. at 19 (citing <u>Paterson-Leitch Co., Inc.</u>

---

[7] The plaintiff also asserts, as a public interest argument, that "IDEA litigation in this jurisdiction is common due to the District's noncompliance with the IDEA." Pl.'s Mot. at 7 (noting that the District engages in "predatory tactics against IDEA litigators"). Although such evidence "may be probative of an otherwise hidden burden on the vindication of the valuable rights provided under the IDEA, . . . the plaintiff offers no authority for the proposition that she may rely on such evidence to justify her request for reimbursement at full <u>Laffey</u> rates." <u>Flood</u>, __ F. Supp. 3d at __, 2016 WL 1180159, at *13. Thus, because the plaintiff's "public interest arguments neither assist the Court in making [the] determination nor provide 'satisfactory evidence' that [the plaintiff's] requested hourly rate is 'in line with those prevailing in the community for similar services,' the Court considers those arguments no further." <u>Wilhite</u>, __ F. Supp. 3d at __, 2016 WL 4007073, at *10 (citations omitted).

v. Massachusetts Mun. Wholesale Elec. Co., et al., 840 F.2d 985, 990 (1st Cir. 1988)).  This is so because the "purpose of the Federal Magistrate's Act is to relieve courts of unnecessary work," id. at 22 (quoting Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980)), and this purpose would be eviscerated "if the district court was required to hear matters anew on issues never presented to the magistrate [judge]," id. (quoting Park Motor Mart, 616 F.2d at 605) ("Common sense and efficient judicial administration dictate that a party should not be encouraged to make a partial presentation before the magistrate [judge] on a major motion, and then make another attempt entirely when the district judge reviews objections to an adverse recommendation issued by a magistrate [judge]." (quoting J. Moore, Moore's Federal Practice ¶ 72.04 [10.-2] at 72-71)).  "Parties must take before the Magistrate Judge, 'not only their best shot but all of their shots, id. at 23 (quoting Singh v. Superintending Sch. Comm., 593 F. Supp. 1315, 1318 (D. Me. 1984)), and failure to present an argument to the Magistrate Judge constitutes a waiver of that argument, see id. ("[T]his court will not consider 'an argument which could have been, but inexplicably was not, presented' to the Magistrate Judge in the first instance." (quoting Paterson-Leitch Co., 840 F.2d at 991)). [8]

Accordingly, because the plaintiff failed to argue that complexity of her IDEA litigation was not an appropriate factor for Magistrate Judge Kay's consideration or that the litigation was complex if complexity was considered, see Report at 19 (noting that the "[p]laintiff has not

---

[8] In arguing the applicability of this Court's decision in Hammond, the plaintiff states that she was unable to "compare her case facts with the Hammond decision" because the parties filed their submissions concerning her request for attorney's fees prior to the publishing of this Court's decision in Hammond. Pl.'s Objs. Reply at 5. Nonetheless, the complexity of the underlying litigation has been considered a relevant factor for a district court's determination of a reasonable hourly rate for attorney's fees well before this Court issued its decision in Hammond. See Blackman, 56 F. Supp. 3d at 25-26; see also Jay, 75 F. Supp. 3d at 219-22; Garvin, 851 F. Supp. 2d at 106. Therefore, the plaintiff was on notice that arguing this factor at the outset of her petition for attorney's fees when the case was before Magistrate Judge Kay and not at this late juncture before realizing that this factor might be considered vital to the consideration of her request.

argued that this case was particularly complex"), the Court will not now consider this argument.[9]

Therefore, because the plaintiff has not provided sufficient evidence to show that her requested hourly rate of the full USAO Laffey rate is "in line with [the] prevailing rate in the community for similar services," Eley, 793 F.3d at 104, the Court finds that Magistrate Judge Kay's recommendation of a 75% award of the USAO Laffey Matrix rate for the legal representation provided by the plaintiff's attorney to be reasonable compensation. Accordingly, the Court will award the plaintiff attorney's fees totaling $70,055.25.[10]

## 2. The Reasonable Hourly Rate for the Clerical/Administrative Type Tasks

Magistrate Judge Kay identified 14.8 hours[11] recorded on the plaintiff's attorney's invoice as time expended on clerical and administrative work, and recommended that those hours be reimbursed at 75% of the USAO Laffey paralegal rate. Report at 20-21. The plaintiff argues that applying a reduced paralegal rate for a solo practitioner "creates a strong disincentive to taking fee shifting case . . . [and] unfairly prejudices solo practitioners and small firms who make up a large portion of the special education practitioners in the District of Columbia." Pl.'s Objs. at 9. She further argues that even if "the Court does reduce the rate for administrative tasks, the

---

[9] The plaintiff further argues that "[t]he Court should not reduce the fees because of the litigation venue as it did in Hammond," because "[t]he District of Columbia Council recently endorsed the use of the LSI Laffey Matrix for attorneys' fees in similar administrative contexts." Pl.'s Objs. at 7 (citing Flood, __ F. Supp. 3d at __, 2016 WL 1180159, at *17). In Hammond, this Court concluded, after extensive analysis of the complexity of the IDEA litigation there, that a reduction of the USAO Laffey rate was reasonable given that the "plaintiff litigated [the] case solely at the administrative level." __ F. Supp. 3d at __, 2016 WL 1704116, at *8. Because the Court has determined that it will not consider the plaintiff's argument regarding the complexity of her IDEA litigation, and because the Court construes the plaintiff's objection to a reduction of fees based upon the litigation venue as an extension of that argument, the Court finds further consideration of this objection unnecessary.

[10] This total recommended does not reflect the 10% overall reduction the Court concluded was appropriate given the plaintiff's acquisition of limited relief. But, it does include the travel time billed by the plaintiff's counsel, for which Magistrate Judge Kay recommended reimbursement at 50% of the determined reasonable hourly rate, without objection by either party.

[11] Neither party has objected to the total hours identified by Magistrate Judge Kay for clerical and administrative work performed by the plaintiff's counsel. Accordingly, the Court adopts this factual finding.

rate should not be reduced further than the Laffey rate for paralegals" because the plaintiff's

attorney has "more than thirty years of experience," and "there is no difference in complexity for

clerical tasks that would warrant a reduction for paralegal work." Id. (citing Blackman, 56 F.

Supp. 3d at 10 (D.D.C. 2014)). The defendant contends that Blackman is inapplicable here

because "the administrative and clerical work was performed by a paralegal, not by one of the

attorneys in the case." Def.'s Objs. Resp. at 6. The Court agrees with the defendant that the

plaintiff's reliance on Blackman is misplaced.

In Blackman, the plaintiff sought a fee award as compensation for the work performed by

two attorneys and one paralegal. 56 F. Supp. 3d at 16. In deciding to award the plaintiff's

paralegal the full USAO Laffey rate for paralegals, the court in Blackman, found that a reduction

was unwarranted because "the difficulty of work performed by paralegals is unlikely to vary in

accordance with the complexity of legal issues litigated in the case." Id. at 17. However, the

court's focus, in reaching this conclusion, was on the reasonable hourly rate for work performed

by a paralegal, not by an attorney. See id. at 16-17. Therefore, the Court is not convinced that

the analysis in Blackman is applicable to this case.

Nevertheless, while it is generally true that "clerical and administrative services amount

to non-billable overhead," Merrick, 134 F. Supp. 3d at 341 (citing cases), "a plaintiff should not

be penalized for engaging solo practitioners or small law firms that cannot 'staff [ ][a] case as if

they had the manpower of a major law firm,'" id. (citing cases). In an effort to balance these

competing principles, "several courts in this District have adopted the middle-ground

approach . . . by awarding solo practitioners and small-firm attorneys fees for clerical work at a

reduced rate." Id. (citing cases).

Here, the Court finds that Magistrate Judge Kay's recommendation to compensate

plaintiff's counsel at a reduced USAO <u>Laffey</u> rate for paralegals for the clerical and administrative work performed is appropriate.  <u>See</u> <u>Merrick</u>, 134 F. Supp. 3d at 341 (finding that a reduced USAO <u>Laffey</u> rate for clerical and paralegal-type work performed by the plaintiff's counsel, who is the same counsel in the instant case, was warranted). In its <u>de novo</u> review of the counsel's billing statement, the Court finds that 14.8 hours "were billed for services such as scanning, faxing, paginating, forwarding, and filing."  <u>Id.</u> Therefore, the Court concludes that Magistrate Judge Kay's recommended rate of 75% of the USAO <u>Laffey</u> rate for paralegals is reasonable, considering that this work was entirely clerical, not requiring even the specialized training of a paralegal.  Accordingly, the Court will award the plaintiff $1,651.13[12] in fees for the clerical or administrative tasks.

## C.    Preserving the Public Fisc

The plaintiff also objects to "the inclusion of dicta from Circuit Judge Brown's concurrence in <u>Price</u>," which she contends was a basis for Magistrate Judge Kay's recommendation to reduce her attorney's fees request "reveal[s] his intent to save money for 'the very children the IDEA seeks to protect' that would otherwise go to prevailing parents' attorneys." Pl.'s Objs. Reply at 6.  The defendant responds that the Court should deny this objection because Magistrate Judge Kay did not "recommend a reduction to 'preserve the public fisc,'" but cited the concurring opinion in <u>Price</u> merely to explain that the plaintiff failed to satisfy her "burden of establishing that administrative IDEA proceedings constitute 'complex federal litigation . . . [or] that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Def.'s Objs. Resp. at 7 (quoting Report at 19).  The Court construes this objection

---

[12] This total recommended does not reflect the 10% overall reduction the Court concluded was appropriate given the plaintiff's acquisition of limited relief.

by the plaintiff as an extension of her public interest arguments, see supra Part II.B.1.a.iii n.7, and therefore finds this objection unreviewable.

Pursuant to the IDEA, district courts are charged with awarding fees "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished," Price, 792 F.3d at 115, and are not obliged to "weigh any public interests that an IDEA fee award might affect." Wilhite, __ F. Supp. 3d at __, 2016 WL 4007073, at *9; see also 20 U.S.C. § 1415(i)(3)(C). Rather, the primary inquiry for the Court is determining the "rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." § 1415(i)(3)(C).

Here, in assisting the Court with this determination, Magistrate Judge Kay did not recommend a reduction based on preserving the public fisc. See Report at 19 (concluding that a reduction in attorney's fees is appropriate because the plaintiff failed to show that the IDEA proceedings constituted "complex federal litigation" or that the requested hourly rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skills, experience, and reputation"). In citing the language in Price to which the plaintiff objects, Magistrate Judge Kay referenced that language merely as support for why inflated fee awards are discouraged. See id. Therefore, because Magistrate Judge Kay did not recommend a reduction based on preserving the public fisc, and because public interest arguments do not assist the Court in making the determinations it is required to make, the Court need not consider this objection.

### III.    CONCLUSION

For the foregoing reasons, the plaintiff's objections to Magistrate Judge Kay's Report are overruled and Magistrate Judge Kay's Report is adopted in its entirety.

**SO ORDERED** this 7th day of September, 2016.[13]

REGGIE B. WALTON
United States District Judge

---

[13] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.